**CAPITOL POLICE LODGE NO.
85, Fraternal Order of
Police, Petitioner**

v.

**PENNSYLVANIA LABOR
RELATIONS BOARD,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 21, 2010.
Decided Dec. 7, 2010.

---

Sean T. Welby, Harrisburg, for Petitioner Capitol Police Lodge No. 85, Fraternal Order of Police.

Warren R. Mowery, Jr., Harrisburg, for Respondent Pennsylvania Labor Relations Board.

Lisa K. Essman, Harrisburg, for Intervenor Department of General Services.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McGINLEY.[1]

Capitol Police Lodge No. 85, Fraternal Order of Police, (FOP) petitions for review of the September 15, 2009, order of the Pennsylvania Labor Relations Board (PLRB), which: (1) sustained exceptions filed by the Commonwealth of Pennsylvania (Commonwealth) to a Proposed Decision and Order of the Board's Hearing Examiner (Proposed Decision); and (2) dismissed the unfair labor practices charge filed by the FOP against the Commonwealth.

The FOP is the exclusive representative of the bargaining unit that includes the

---

1. The case was reassigned to this chambers on September 15, 2010.

Commonwealth's Capitol Police Officers. The Commonwealth and the FOP are parties to an interest arbitration award that was effective from July 1, 2007, through June 30, 2011. The interest arbitration award incorporated Article 44 of the parties' 1999 to 2003 collective bargaining agreement (CBA), entitled "Unit Work." Article 44, Section 2 provided that "any and all new posts or assignments which could be staffed by Capitol Police or Commonwealth of Pennsylvania Capitol Security Officers shall not be staffed in a manner that would reduce the current complement of Capitol Police Officers." (Findings of Fact, Nos. 1, 8.)

The Commonwealth sold property that it owned on Spring Garden Street in Philadelphia, which housed state offices and, thereafter, leased properties on Arch Street and Market Street. (Findings of Fact, No. 7.) In November 2008, the Commonwealth set up scanners in the Arch Street building, operated by security guards employed by a private security firm. The Commonwealth did not offer to bargain with the FOP before hiring the private security guards to operate the scanners in Philadelphia.

Since 2005, the Commonwealth had used Capitol Police Officers on an exclusive basis to operate scanners at five buildings in Harrisburg. (Findings of Fact, Nos. 2, 5–6.)

In December 2008, the FOP filed an unfair labor practices charge with the PLRB, alleging that the Commonwealth violated sections 6(1)(a) and 6(1)(e) of the Pennsylvania Labor Relations Act (PLRA)[2] and the Act known as Act 111[3] when it unilaterally transferred bargaining unit duties, i.e., the operation of scanners, to non-bargaining unit members. The matter was assigned to and heard by a Hearing Examiner.

■ The Commonwealth argued under Article 44, Section 2 of the CBA it is authorized to hire private security guards to operate the scanners. The Commonwealth contended that new assignments could be performed by either security officers or police officers, and the assignments did not result in a reduction in the complement of police officers. The Hearing Examiner rejected that argument and concluded that the Commonwealth committed an unfair labor practice. The Hearing Examiner issued a proposed Decision and Order that directed the Commonwealth to rescind the transfer of bargaining unit work to private security guards.

■ The Commonwealth filed exceptions and argued that, because the Arch Street building was a "new" post, the Commonwealth was authorized under Article 44, Section 2 of the CBA to staff the post with private security guards as long as the action did not result in a reduction in the complement of capitol police officers. The Commonwealth also asserted "contractual privilege" as an affirmative defense to the assertion that the Commonwealth failed to bargain in good faith. *Pennsylvania State Troopers Association*

2. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.6(1)(a) & 211.6(1)(e). Section 6(1)(a) of the PLRA states that it shall be an unfair labor practice for an employer to interfere with the exercise of the rights guaranteed in this act. Section 6(1)(e) of the PLRA states that it shall be an unfair labor practice for an employer to refuse to bargain collectively with the representative of his employees.

3. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10. Section 1 of Act 111 states that policemen employed by the Commonwealth shall have the right to bargain collectively with their public employer through their representative concerning the terms and conditions of their employment. 43 P.S. § 217.1.

*v. Pennsylvania Labor Relations Board,* 761 A.2d 645 (Pa.Cmwlth.2000). The "contractual privilege" affirmative defense calls for the dismissal of an unfair labor practice charge where the public employer establishes a sound arguable basis in the language of the CBA for the employer's claim that its action was permissible under the CBA. *Id.*

On September 15, 2009, the PLRB issued a Final Order in which it sustained the exceptions, in part, and dismissed the unfair labor practices charge. In its Final Order, the PLRB concluded that the language contained in Article 44 of the parties' CBA provided a sound arguable basis for the Commonwealth to assign the work that involved the operation of the scanning equipment to a private security firm. The PLRB held that resolution of whether the assignment in this case was a "new post or assignment" involved a contractual interpretation, which was *a matter for an arbitrator*, rather than the PLRB. This Court must agree.

▮ On appeal[4], the FOP argues that the PLRB erred when it concluded that Article 44, Section 2 provided the Commonwealth with a sound arguable basis for the hiring of private security guards to operate scanners in the Arch Street building. Essentially, the FOP argues that the PLRB erred because it failed to conclude that the work of operating scanning equipment was exclusive to the FOP bargaining unit. However, a review of the PLRB's Final Order reveals that it did not reach a conclusion regarding the exclusivity of the work. Because the PLRB found that the Commonwealth had a contractual privilege to assign the work outside of the unit, it did not address the issue of exclusivity.

▮ Long standing precedent provides that if an employer articulates a sound arguable basis for its interpretation of the parties' CBA, the PLRB will dismiss an unfair labor practices charge based on the claim that an employer has violated its bargaining duty. *Pennsylvania State Troopers Association v. Pennsylvania Labor Relations Board,* 761 A.2d 645 (Pa. Cmwlth.2000).

Here, the parties' CBA, specifically Article 44, Section 2, provided the Commonwealth with a sound arguable basis for its decision to assign the work of scanning equipment operation to an outside vendor. The provision entitled "Unit Work" provided that "any and all new posts or assignments which could be staffed by Capitol Police or Commonwealth of Pennsylvania Security Officers shall not be staffed in a manner that would reduce the current complement of Capitol Police Officers." Basically, the FOP simply disagrees with the Commonwealth's interpretation. However, this Court has held that it is not the role of the PLRB to determine the correct interpretation of the agreement.

In *Wilkes–Barre Township v. Pennsylvania Labor Relations Board,* 878 A.2d 977 (Pa.Cmwlth.2005), this Court stated:

> With respect to the proper role of the Board [PLRB] in labor disputes, this Court has explained that the Board [PLRB] 'exists to remedy violations of statute, i.e., unfair practices, and not violations of contract.' *Pennsylvania State Troopers Association v. Pennsylvania Labor Relations Board,* 761 A.2d 645, 649 (Pa.Cmwlth.2000). Where a breach of contract is alleged, it should be resolved by an arbitrator using the

---

4. Our scope of review is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed or whether the PLRB's necessary findings are supported by substantial evidence. *Pennsylvania State Troopers Association v. Pennsylvania Labor Relations Board,* 761 A.2d 645 (Pa.Cmwlth.2000).

grievance procedure set forth in the parties' collective bargaining agreement. *Id.* However the Board [PLRB] is empowered to review an agreement to determine whether the employer has clearly repudiated its provisions because such a repudiation may constitute both an unfair labor practice and a grievance. *Wilkes–Barre Township,* 878 A.2d at 982.

Because the parties had contract language that expressly addressed the matter at issue, it was the role of an arbitrator to interpret that language, not the PLRB. The PLRB appropriately declined to take on the role of an arbitrator and interpret the CBA.

The PLRB is affirmed.

### ORDER

AND NOW, this 7th day of December, 2010, the order of the Pennsylvania Labor Relations Board, dated September 15, 2009, is hereby affirmed.

### DISSENTING OPINION FILED BY Senior Judge FRIEDMAN.

I respectfully dissent. The majority holds that Article 44, Section 2 of the collective bargaining agreement (CBA) between the Fraternal Order of Police (FOP) and the Commonwealth of Pennsylvania (Commonwealth) provided a sound, arguable basis for the Commonwealth to assign the operation of scanning equipment in a Philadelphia state office building to an outside vendor. (Majority op. at 410–11.) I cannot agree.

Article 44, Section 2 of the CBA provides that "any and all new posts or assignments **which could be staffed by Capitol Police or Commonwealth of Pennsylvania Capitol Security Officers** shall not be staffed in a manner that would reduce the current complement of Capitol Police Officers." (R.R. at 190a) (emphasis added). The provision clearly applies only to new posts and assignments that could be staffed by either capitol police officers or capitol security officers. The Commonwealth cannot soundly argue that the provision applies to any other situation. The threshold question, then, is whether the operation of scanners in Philadelphia is a new post or assignment which could be staffed by capitol police officers or capitol security officers.

In *Department of General Services v. Fraternal Order of Police, Lodge No. 85,* 903 A.2d 84 (Pa.Cmwlth.2006) (*en banc*), the Commonwealth assigned capitol security officers, rather than capitol police officers, to operate scanners in the state office buildings in Harrisburg. The FOP filed a grievance, which proceeded to arbitration. The arbitrator held that the operation of scanners requires the exercise of police powers, and, thus, it is bargaining unit work that must be performed by capitol police officers. In so holding, the arbitrator rejected the Commonwealth's argument that Article 44, Section 2 allowed the Commonwealth to assign capitol security officers to operate the scanners because it was a new assignment that would not reduce the complement of capitol police officers. This court upheld the arbitrator's award.

Thus, the matter presented here was already decided in a prior grievance arbitration proceeding. A new post or assignment requiring operation of scanners cannot be staffed by either capitol police officers or capitol security officers. Such a post or assignment **must** be staffed by capitol police officers because it requires the exercise of police powers. Therefore, the Commonwealth could not rely on Article 44, Section 2 as an affirmative defense in this case.

The majority concludes otherwise, stating that it is the role of an *arbitrator* to

interpret Article 44, Section 2 of the CBA, not the Pennsylvania Labor Relations Board (PLRB). (Majority op. at 411.) In other words, the majority believes that the FOP should have filed another grievance instead of a charge of unfair labor practices with the PLRB. In my view, once an arbitrator has determined the correct interpretation of a provision of a CBA, the losing party cannot ignore the final and binding award, and the prevailing party is not required to re-litigate the matter. In this case, the Commonwealth was the loser in the initial arbitration proceeding over the interpretation of Article 44, Section 2 of the CBA. The majority now holds that the initial award was not final and binding on the Commonwealth and that the FOP must once again litigate the matter. That is not my understanding of how final and binding arbitration works.

Accordingly, I would reverse.